IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWESE DRAYTON, Individually and as Personal Representative of the Estate of RAYMOND DRAYTON, Deceased | : CIVIL ACTION : : : |
| v. | : No. 03-2334 : |
| PILGRIM'S PRIDE CORPORATION and JACK LAMBERSKY POULTRY CO., INC., d/b/a J.L. FOODS CO., INC. | : : : : |
| LARON HARVEY, a Minor, by His Mother and Guardian, SHAKANDRA HAMPTON, and SHAKANDRA HAMPTON | : CIVIL ACTION : : : |
| v. | : No. 03-3500 : |
| PILGRIM'S PRIDE CORPORATION and JACK LAMBERSKY POULTRY CO., INC. | : : : |
| JODY LEVONCHUCK, Administrator of the Estate of JOSEPH CUSATO, Deceased | : CIVIL ACTION : : |
| v. | : No. 04-3577 : |
| PILGRIM'S PRIDE CORPORATION and JACK LAMBERSKY POULTRY CO., INC., d/b/a J.L. FOODS CO., INC. | : : : : |
| PATRICIA NIEMTZOW, Individually and as Personal Representative of the Estate of FRANK NIEMTZOW, Deceased | : CIVIL ACTION : : : |
| v. | : No. 04-3974 : |
| WAMPLER FOODS, a wholly owned subsidiary of PILGRIM'S PRIDE CORPORATION, a Delaware Corporation, and JACK LAMBERSKY POULTRY COMPANY, INC., a New Jersey Corporation d/b/a J. L. FOODS CO., INC. | : : : : : : : |

**MEMORANDUM AND ORDER**

**Savage, J.**                                                                                                         August 30, 2005

In this products liability action against Pilgrim's Pride Corporation ("Pilgrim's Pride") and Jack Lambersky Poultry Co., Inc., processors and distributors of poultry products, for injuries arising out of a Listeriosis outbreak, the plaintiffs seek documents prepared by a non-party consultant, Ernst & Young ("E & Y"), who had prepared a continuing food safety review for Pilgrim's Pride before and after it recalled the suspect product on October 9, 2002. Pilgrim's Pride has moved to quash the plaintiff's subpoena, arguing that the material is protected by both the "self-critical analysis" privilege and the work product doctrine.

Pilgrim's Pride does not contend that the report prepared prior to the recall was done in anticipation of litigation but rather as part of an ongoing safety review process. It argues that the pre-recall report is protected by the self-critical analysis privilege. As to the documents generated after the outbreak, it maintains that they are also covered by the work product doctrine because its counsel engaged the consultant to assist him in any litigation arising out of the outbreak.

Because the self-critical analysis privilege does not apply, the draft Food Safety Report and associated documents prepared before October 16, 2002, the date the consultant was presumably engaged to assist the defendant in any litigation, is not protected. It is not possible to determine, on the basis of this record, whether the engagement of E & Y was actually for litigation purposes or was merely an extension of its earlier assignment. Thus, production of similar reports done after October 16, 2002 will not be ordered at this time.

## Background

In the Fall of 2002, there was an outbreak of Listeriosis in the northeast United

States. On October 9, 2002, Pilgrim's Pride initiated a recall of poultry products it had distributed. Four days later, the recall was expanded to include 27 million pounds of poultry product produced at its Franconia, Pennsylvania plant.

E & Y had been hired by Pilgrim's Pride to conduct a risk assessment of the food safety processes at selected Pilgrim's Pride plants, including Franconia, and to submit a report detailing risks of contamination within the food processing. Among the key objectives of the study were to "perform a risk assessment within the food safety process, identify and evaluate controls over significant risks" and to "test controls over the most significant risks."

E & Y issued its draft report, entitled "Food Safety Review," on August 23, 2002, providing "the detail of business risks, recommendations and management responses." E & Y continued reviewing the processes at the plant up to and after the recall. On October 6, 2002, Pilgrim's Pride's counsel authored an engagement letter, requesting E & Y to consult with him regarding matters which could arise in litigation involving the recall.

### Self-Critical Analysis Privilege

Because the law of the forum state governs privilege, Pennsylvania common law controls. Fed. R. Evid. 501. Thus, we shall apply Pennsylvania legal principles.

Pennsylvania has not recognized the self-critical analysis privilege. Although a few lower Pennsylvania state courts have applied the privilege in limited situations, no Pennsylvania appellate court has adopted it. In fact, the Pennsylvania Commonwealth Court has specifically noted that the privilege has not been recognized in this state. *VanHime v. Dep't of State*, 856 A.2d 204 (Pa. Cmwlth. 2004).

The self-critical analysis privilege, where it has been applied, covers only subjective content and not objective data prepared in connection with mandatory government reports

or for self-critical analyses. The privilege provides protection where the policy favoring exclusion clearly outweighs the need of the party seeking the information. *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992); *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 34 (Pa. Cmwlth. 2001).

The essence of the privilege is the value to the public of continuing the free flow of the type of information created by the analysis. Consequently, the inquiry focuses on the public policy requirement, that is, whether disclosure of material generated by a party's self-critical analysis will discourage or curtail future such studies. *VanHime v. Dep't of State supra* at 212. In other words, where the party's fear of potential disclosure of negative findings will inhibit honest critical assessments, disclosure is disfavored.

Even if the privilege did exist in Pennsylvania, it would not apply to the E & Y report. Disclosure of the E & Y report will not inhibit the defendant from conducting further safety studies. Not to critically assess its food safety processes would subject the defendant to increased risk of unsafe and unhealthy conditions at its plants that could result in harmful effects to its consumers and its reputation. Hence, there is no overriding policy in the context of this case favoring exclusion.[1]

Pilgrim's Pride vehemently contests that the listeria that may have caused the injuries in these cases came from its Franconia plant. There is a specific section of the report entitled "Listeria Incidents at Franconia Location." Evidence that E & Y had found positive listeria test results there, though not conclusive, is probative of the plaintiffs' claims. Failure to take timely corrective action in the face of such evidence is also relevant.

---

[1] In his insightful consideration of the same issue in related New Jersey cases, Superior Court Judge Ralph L. DeLuccia similarly rejected Pilgrim's Pride's argument that disclosure would have a "chilling effect" on future voluntary safety reviews. *Rosella v. Pilgrim's Pride*, N. J. Sup. Ct., PAS-L-1141-05.

Given the passage of time, there is no other viable way for the plaintiffs to investigate the presence of listeria at Pilgrim's Pride's Franconia plant. Thus, the plaintiffs' need for the information weighs in favor of disclosure.

### Work Product Doctrine

The reports generated after counsel's "engagement letter" present another issue. Pilgrim's Pride has invoked the work product doctrine, claiming that any work done by E & Y after the date of the letter was in anticipation of litigation. Plaintiffs suggest that the letter was a disingenuous preemptive attempt to shield otherwise discoverable material.

The protective ambit of the work product doctrine extends to materials prepared by an attorney's consultant. *In re Cendant Corporation Securities Litigation,* 343 F.3d 658, 662 (3d Cir. 2003). Thus, if E & Y was genuinely engaged to assist Pilgrim's Pride's attorney in anticipation of any litigation arising out of the listeria outbreak, its work product would be protected.

Pilgrim's Pride cannot seriously contend that E & Y's endeavor was not already a work in progress when counsel sought to expand the consultant's role. Drawing the line between what is work product in anticipation of litigation and what is part of the continuing safety review may be difficult, but it is unnecessary at this time because plaintiff's have not demonstrated a substantial need for the materials. They have not shown how disclosure could benefit them.

Were we not ordering production of the report and documents prepared before October 16, 2002, the calculus may be different. The information contained in the pre-outbreak report satisfies the need of the plaintiffs to determine if listeria was present in the Franconia plant and whether Pilgrim's Pride knew it.

To assure that the line between materials prepared in anticipation of litigation and those prepared as part of the ongoing review has not been obliterated, Pilgrim's Pride shall produce, for *in camera* review, the E & Y reports and documents prepared after October 16, 2002. At the same time, it shall also submit redacted copies identifying those portions which it contends were specifically prepared in anticipation of litigation as opposed to those which were done in the normal food safety review process. In the meantime, it is unnecessary to determine whether counsel's "engagement letter" was real or an artifice. If such a determination becomes necessary after the *in camera* review of the post October 16, 2002 materials, the parties shall be given an opportunity to be heard.

      S\Timothy J. Savage
      TIMOTHY J. SAVAGE, J.